UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3-29-19

| | |
|---|---|
| IGT, <br><br> Plaintiff, <br><br> -against- <br><br> HIGH 5 GAMES, LLC <br><br> Defendant. | 17-CV-9792 (ALC) <br><br> **OPINION AND ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff International Game Technology ("IGT") brings this action against Defendant HIGH 5 GAMES, LLC ("H5G") alleging (I) Federal Trademark Infringement; (II) Federal Unfair Competition; (III) Breach of Contract; (IV) Deceptive Acts and Practices – General Business Law § 349, 350 and 350-1; and (V) Federal Copyright Infringement. ECF No. 56. Defendant now Moves to Dismiss the First Amended Complaint ("FAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

### BACKGROUND

**I.    Factual Background[1]**

**A. The Parties**

---

[1] The following facts derive from IGT's FAC and are presumed to be true and are construed in the light most favorable to IGT. *See Cartier v. Micha, Inc.*, No. 06 Civ. 4699, 2007 WL 1187188, at *1 (S.D.N.Y. Apr. 20, 2007); ECF No. 56.

1

IGT develops and distributes computerized gaming equipment and software in the casino-style slot games field.

IGT owns and holds United States Trademark Registrations for the GOLDEN GODDESS and DA VINCI DIAMONDS titles.[2] IGT also owns all patents, trademarks, copyrights, and applications for registration of any intellectual property related to GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS.[3] *Id.* at ¶¶ 10-14.

Defendant H5G provided IGT with certain casino-style slot games they created and developed. IGT distributed those games both as slot gaming machines to physical casino operators and hosted them as online for-wager games and online non-wager social games. These games included titles such as GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS. *Id.* at ¶ 15.

### B. The Settlement Agreement

Due to a dispute regarding these games, the parties sued one another in the United States District Court for the Northern District of Illinois. *See IGT v. High 5 Games, LLC*, Case No. 15 cv-2163 and *High 5 Games, LLC v. IGT*, Case No. 1:15-cv-02133 ("the N.D. Illinois Actions"). On January 1, 2016, the parties settled the N.D. Illinois Actions and executed a Settlement Agreement ("Settlement Agreement"), setting forth the parties' rights regarding, among other intellectual property, the trademarks GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS and the artwork associated with games using those marks. *Id.* at ¶ 17.

### C. Discoveries after the Settlement Agreement's Effective Date

---

[2] Registration Nos. 3976064 and 3330664 respectively. ECF No. 56, ¶¶ 9,10.
[3] IGT received the following U.S. Copyright Registrations: VA 2-082-268, titled GOLDEN GODDESS GAMING MACHINE for 2-D artwork, which has an Effective Date of Registration of January11, 2018; VA 2-082-956, titled CATS GAMING MACHINE for 2-D artwork, which has an Effective Date of Registration of January 11, 2018; and VA 2-084-417, titled DAVINCI DIAMONDS GAMING MACHINE for 2-D artwork, which has an Effective Date of Registration of January 22, 2018. ECF No. 56, ¶¶ 12-14.

Around November 2, 2017, IGT learned that H5G continued to use the GOLDEN GODDESS and CATS trademarks and artwork within casino-style slot games on its casino apps for smartphones and electronic devices. *Id.* at ¶ 19. IGT alleges that H5G continues to offer and distribute these apps to the public. *Id.* Specifically, IGT alleges H5G uses GOLDEN GODDESS in connection with its product "GOLDEN GODDESS Casino - Best Vegas Slot Machines," which is a casino-style slot game, and CATS in connection with "CATS Casino." IGT never approved of H5G's use of these trademarks or the copyrighted artwork and H5G is not licensed to do so. *Id.* at ¶ 22. Between November 16 and December 11, 2017, IGT objected to the use and tried to address these concerns, but H5G argued it was free to use them. *Id.* at ¶ 35.

On or about January 19, 2018, IGT learned that H5G also used their DA VINCI DIAMONDS trademark and copyrighted artwork within its "DA VINCI DIAMONDS Casino" slot game on its app and other electronic devices it continues to distribute to the public. Along with the app, H5G uses DA VINCI DIAMONDS in connection with its casino-style slot game "DA VINCI DIAMONDS Casino - Best Free Slot Machines." Similar to the other titles, IGT never approved of H5G's use of the DA VINCI DIAMONDS trademark or the copyrighted artwork and H5G is not licensed to do so. *Id.* at ¶¶ 42-43. IGT continues to investigate whether H5G has used or is using additional IGT trademarks or artwork contrary to the license. *Id.* at ¶ 44.

## II. Procedural Background

On December 14, 2017, IGT filed its Complaint alleging: (I) Federal Trademark Infringement; (II) Federal Unfair Competition; (III) Breach of Contract; and (IV) Deceptive Acts and Practices – General Business Law § 349, 350 and 350-1. ECF No. 1. On December 26, 2017, IGT filed a Motion for Preliminary Injunction, seeking to enjoin H5G from using

the casino-style slot games at issue. ECF No. 9. On January 13, 2018, H5G sought leave to file a Motion to Dismiss IGT's Complaint pursuant to Fed. R. Civ. P. § 12(b)(6). ECF. No. 26. On January 17, 2018, after oral argument on IGT's Motion for Preliminary Injunction, the Court denied Plaintiff's Application for Injunctive Relief. ECF No. 54. On January 31, 2018, IGT filed the FAC adding causes of actions regarding the DAVINCI DIAMONDS and Copyright Infringement. ECF. No. 56.

On February 13, 2018, the Court held a hearing concerning Section 9(f) of the Settlement Agreement. ECF No. 76. On March 16, 2018, the Court issued an Order enjoining H5G "from infringing on Section 9(f) of the parties' Settlement Agreement, through its use of the GOLDEN GODDESS, CATS, and DAVINCI DIAMONDS trademarks." ECF No. 69. On March 20, 2018, IGT requested the Court to Order H5G to Show Cause for failing to comply with the Preliminary Injunction Order. ECF No. 70. On April 3, 2018, H5G filed its opposition and asserted compliance with the Court's Injunctive Order. ECF. No. 76. On April 17, 2018, the Court denied IGT's Order of Contempt Application, and clarified the Injunctive Order. ECF. No. 83.

On April 26, 2018, H5G filed this Motion to Dismiss Plaintiff's FAC in its entirety pursuant to Rule 12(b)(6). ECF No. 84. H5G argues that IGT is unable to sustain any cause of action in the FAC and, in any event, IGT's claims are barred by the release provisions in the Settlement Agreement. ECF. No. 76.

**LEGAL STANDARD**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Valley Lane Indus.*

*Co. v. Victoria's Secret Direct Brand Mgmt, LLC*, 11-3045-cv, 2012 WL 147919, at *1 (2d Cir. Jan. 19, 2012) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949); *Software For Moving, Inc. v. Frid*, No. 09 Civ. 4341, 2010 WL 2143670, at *2 (S.D.N.Y. May 10, 2010).

In ruling on a 12(b)(6) motion, a court may consider the complaint as well as "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." *Zdenek Marek v. Old Navy (Apparel) Inc.*, 348 F.Supp.2d 275, 279 (S.D.N.Y. 2004) (citing *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001) (internal quotations omitted). The party moving for dismissal must show that no claim has been stated. *Goldberg v. Danaher*, 599 F.3d 181, 183–184 (2d Cir. 2010).

## DISCUSSION

### I. The Settlement Agreement Does Not Bar Plaintiff's Claims

H5G argues that the Settlement Agreement's release provisions bar IGT's FAC. IGT contends that the Settlement Agreement resolved prior disputes between IGT and H5G prior to 2016 only, and the FAC relates to alleged violations after the Settlement Agreement went into effect. The Settlement Agreement reads,

> "IGT and H5G –: [m]ay have sustained Losses that are presently unknown and unsuspected, and that such Losses as may have been sustained may give rise to additional Losses in the future. The parties further acknowledge that they have negotiated this Settlement Agreement taking into account presently unsuspected and unknown Losses, and the parties voluntarily and with full knowledge of its significance, expressly waive and relinquish any and all rights the Releasing

5

Parties may have under any statute, rule, or common law principle, in law or equity, relating to limitations on general releases and such Losses.

*See* Ex. A, p. 5, ¶ 3(d). Defendants argue that IGT's FAC relates to "Losses in the future" and thus the parties agreed to release these causes of action.[4] However, the Settlement Agreement, which became effective in 2016, only disposed of causes of action relating to the 2012 Litigation up to that point. *See Id.* at § 3(a) and 3(c). Section 3(a) is a limited release limited to "Losses that any Releasing Person and their Affiliates had, now has, or may have had or may hereafter discover without regard to the subsequent discovery or existence of different or additional facts. . . related to the Allegations, Litigation, or 2012 Agreement." *Id.*

This understanding is further evidenced by Section 18 of the Settlement Agreement, in which the parties confirmed that "[t]his Settlement Agreement . . . is the entire agreement between the parties concerning the Litigation, Allegations, the 2012 Agreement and any other matters between the Parties as of or before the Effective Date." ECF. No. 86; Ex. A at § 18.

Furthermore, the Settlement Agreement contains a licensing regime with the licenses' conditions and enforcement provisions. *See* e.g., ECF No. 86, Ex. A at § 9(a)-(h), et seq. For example, H5G can only use IGT's trademarks with IGT's approval and non-approved uses of IGT's trademarks are "not licensed." *See* e.g. *Id.* at § 9(f). Accordingly, the Settlement Agreement contemplated and left open the possibility of future claims based on any or all of IGT's trademarks for future resolution.

"New York law permits a party to release unknown claims, including unknown fraud claims," but only "so long as the release is intentional and fairly made." *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011) (emphasis added). The

---

[4] Section 3(a) defines "Losses" as "any and all manner of actions, causes of action, suits, claims, demands, judgments, liabilities, debts, damages, losses, costs, expenses, judgments, awards, interest, compensation, and proceeds, whether based in tort, contract, strict liability or other theory, arising in law or equity, fixed or contingent, known of unknown, foreseeable or not, certain or contingent, disclosed or undisclosed, or asserted or not"

6

limited release of prior causes of action in the Settlement Agreement Section 3 combined with the licensing regime detailing how H5G *may* use IGT's intellectual property under the Settlement Agreement Section 9 et seq. indicate that IGT did not "intentional[ly]" or "fairly" release any claims asserted in the FAC. Therefore, as explained below, each cause of action in the FAC accrued after 2016 and thus is not barred by the Settlement Agreement.[5] The Court now addresses each claim's plausibility.

## II. Trademark Infringement

IGT's first cause of action is for trademark infringement. As an initial matter, the Court finds that the Settlement Agreement does not release H5G from liability on this count. H5G's accused infringement of IGT's registered "GOLDEN GODDESS" and "DA VINCI DIAMONDS" trademarks began after January 1, 2016, after H5G agreed that IGT was the sole owner of these particular marks, and after IGT told H5G that use of these particular registered Trademarks that did not comply with Sections 9(e) and 9(f) was not authorized. *See* e.g., ECF No. 56 at ¶¶ 17-19, 25-27, 32-36, 38, 42-43.

To prevail on a trademark infringement claim brought under 15 U.S.C. § 1114(1)(a), a plaintiff must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale or advertising of goods or services, (5) without the plaintiff's consent. *Transcience Corp. v. Big*

---

[5] *See also World Wrestling Entertainment v. Jakks Pacific*, where the court held that a settlement agreement, when read as a whole, did not bar the claims at issue, despite the presence of language more expansive than the language of the 2016 Settlement Agreement at issue in this case. 530 F. Supp. 2d 486, at 530-531 (SDNY 2007) (holding that a provision releasing defendant "from any and all claims . . . of every kind and nature whatsoever, whether known or unknown, . . . arising from or relating to the Audit" made clear that "the Parties intended to bar claims arising out of the Audit itself.") Here, the 2016 Settlement Agreement places similar limitations on the release in § 3(a), limiting the release to losses "related to the Allegations, Litigation, or 2012 Agreement, including the financial audits of each party."

*Time Toys, LLC*, 50 F. Supp. 3d 441, 449 (S.D.N.Y. 2014), citing *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005).

Here, IGT alleges sufficient facts to sustain a federal trademark infringement claim. First, IGT contends it owns two registered federal trademarks – GOLDEN GODDESS and DAVINCI DIAMONDS (Registration No. 3976064 and No. 3330664, respectively). ECF No. 86 at 18. Second, IGT properly alleges H5G used the registered trademarks within the stream of commerce in connection with the sale of goods without their consent. For example, the FAC claims that the GOLDEN GODDESS and DAVINCI DIAMONDS games "were being offered for distribution to the public." *Id.* at 19. Further, the FAC states that "[p]rior to such use of the trademark GOLDEN GODDESS and the copyrighted artwork, High 5 Games did not obtain approval from IGT" *Id.* at 25.

In addition, plaintiffs must also allege that, "the defendant's use of the mark is likely to cause confusion 'as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services or commercial activities by [plaintiff].'" *Zimmerli Textil AG v. Kabbaz*, No. 14-CV-1560, 2015 WL 5821523, at *4 (E.D.N.Y. Sept. 30, 2015). (internal citation omitted); 15 U.S.C. § 1125(a)(1)(A); *see also Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1508-09 (2d Cir. 1997); *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993). Likelihood of confusion requires that "an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question, or are likely to believe that the mark's owner sponsored, endorsed, or otherwise approved of the defendant's use of the mark[.]" *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 411 (S.D.N.Y. 2006) (internal quotations and citations omitted). To determine whether a mark will likely confuse consumers,

courts rely on the "well established" *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961) eight-factor balancing test.[6]

Despite the balancing test, courts consistently maintain that "[l]ikelihood of confusion is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss." *Van Praagh*, 993 F. Supp. 2d at 303 (quoting *The Name LLC v. Arias*, No. 10 Civ. 3212, 2010 WL 4642456, at *5 (S.D.N.Y. Nov. 16, 2010); *see also Peek & Cloppenburg KG v. Revue, LLC*, 2012 WL 4470556 at *5 (S.D.N.Y. Sept. 19, 2012) (quoting *DC Comics Inc. v. Reel Fantasy, Inc.*, 696 F.2d 24, 26 (2d Cir. 1982) ("[A] likelihood of confusion is a question of fact as to the probable or actual actions and reactions of prospective purchasers of the goods or services of the parties.")[7]

Nevertheless, IGT advanced sufficient facts alleging the existence of a likelihood of confusion. IGT's FAC contains extensive evidence to support their claim that H5G's "Golden Goddess" game creates a likelihood of confusion in addition to the alleged facts. *See* e.g., ECF No. 86, Ex. A at ¶¶ 19-27. For example, the FAC describes H5G's "Platinum Goddess" mark as being substantially similar to IGT's registered "GOLDEN GODDESS" trademark and provides a side-by-side comparison of the two marks to support the allegation.[8]

Considering the Court must accept the FAC's factual allegations as true and draw all reasonable inferences in favor of the non-moving party, the Court finds that IGT has pleaded a

---

[6] *See Merck & Co.*, 425 F. Supp. 2d at 411; *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-0946, 2015 WL 1299259, at *8 (E.D.N.Y. Mar. 23, 2015).
[7] *Merck & Co.*, 425 F. Supp. 2d at 412; *Nasdaq Stock Mkt. v. Archipelago Holdings*, 336 F. Supp. 2d 294, 305 (S.D.N.Y. 2004) (recognizing that assessing likelihood of confusion involves a factual inquiry which is inappropriate when determining a motion to dismiss*); Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 446 (S.D.N.Y. 2012) (collecting cases).
[8] IGT provided a side-by-side comparison of IGT's DA VINCI DIAMONDS trademark and copyrighted artwork and H5G's use of it in the FAC as well. FAC at ¶ 40.

valid cause of action for trademark infringement under 15 U.S.C. § 1114 and H5G's Motion to Dismiss with respect to this claim is **DENIED**.

**III. Federal Unfair Competition Claims**

IGT's federal unfair competition claim pursuant to 15 U.S.C. § 1125(a) alleges H5G unlawfully used IGT's registered and unregistered trademarks.

Section 43(a) of the Lanham Act protects against two types of "unfair competition" -- false designations of origin and false descriptions or representations related to products entering the stream of commerce. 15 U.S.C. § 1125(a); *Shen Mfg. Co. v. Suncrest Mills, Inc.*, 673 F. Supp. 1199, 1202 (S.D.N.Y. 1987). The "federal unfair competition provision" of the Lehman Act is broader than the federal trademark infringement provision and "protects unregistered trademarks[.]" *L'Oreal USA, Inc. v. Trend Beauty Corp.*, No. 11 Civ. 4187, 2013 WL 4400532, at *14 (S.D.N.Y. Aug. 15, 2013) (quoting 15 U.S.C. § 1125(a)); *see also Lopez v. Gap, Inc.*, 883 F. Supp. 2d 400, 412-413 (S.D.N.Y. 2012); *Van Praagh*, 993 F. Supp. 2d at 301. Courts apply the same federal trademark infringement analysis to federal unfair competition claims. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006) ("Because the trademark at the core of this case ... is unregistered, we focus our discussion on the § 43(a) claim. Yet, we note that the same analysis applies to claims of trademark infringement under § 32") (citing *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003)); *see also* 15 U.S.C. §§ 1114, 1125(a). *Time, Inc. v. Petersen Publ'g Co. L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999) (noting that "*Gruner* test" is applicable to claims brought under § 1114(1) and § 1125(a)).

Therefore, for the reasons discussed above, IGT's unfair competition claim for its registered trademarks survives Defendant's Motion to Dismiss. Similarly, IGT stated a plausible unfair

10

competition claim as to its unregistered CATS trademark. IGT alleges H5G used CATS for the confusingly similar "Majestic Cats" mark within its "Cats Casino" game without authorization. IGT also provided a side-by-side comparison of the two marks for support. Furthermore, like the registered trademarks, H5G publicly used CATS in commerce in connection with the sale or advertising of goods or services.

Furthermore, as in Count I, the Settlement Agreement does not release H5G from liability on claims for unfair competition.[9] Thus, for the same reasons as IGT's trademark infringement claim, IGT's unfair competition claim as to both its registered and unregistered trademarks survives the motion to dismiss.

### IV. Breach of Contract

IGT alleges H5G breached the Settlement Agreement in numerous ways, including using IGT's trademarks and artwork within a casino-style slot game after January 1, 2016, and using IGT's trademarks without IGT's prior approval after January 1, 2016. *Id.* at ¶¶ 19-44.[10]

Under New York law, a breach of contract claim must allege: (i) the existence of a contract; (ii) adequate performance of the contract by the plaintiff; (iii) breach by the other party; and (iv) damages suffered as a result of the breach. *See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir.

---

[9] H5G's accused infringement of IGT's unregistered "CATS" mark began after January 1, 2016, after H5G agreed that IGT was the sole owner of the mark, and after IGT told H5G that use of this trademark that did not comply with § 9(e) and 9(f) was not authorized. See, e.g., 56 at ¶¶ 17-19, 25-27, 32-36, 38, 42- 43.

[10] Plaintiff points out that the Court previously granted Preliminary Injunctive relief in favor of IGT on this count and specifically found that H5G violated the Settlement Agreement. *See* ECF No. 69. However, courts are not bound by their former preliminary injunction decisions which applied preliminary injunction standards. *Krauth v. Exec. Telecard, Ltd.*, No. 95 CIV. 3967 (RWS), 1996 WL 29420, at *12 (S.D.N.Y. Jan. 24, 1996) (citing *Male v. Crossroads Assoc.*, 337 F. Supp. 1190, 1194 (S.D.N.Y. 1971), aff'd 469 F.2d 616 (2d Cir. 1972)).

1966) (citation omitted); see also *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 357-58 (S.D.N.Y. 2001) (citation omitted).

Here, IGT adequately pleaded the existence of an agreement with H5G by "pleading provisions of the contract upon which the claim is based." *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012) (quoting *Howell v. Am. Airlines Inc.*, No. 05 Civ. 3628, 2006 WL 3681144, at *3 (E.D.N.Y. Dec. 11, 2006)). Furthermore, IGT adequately alleged the remaining elements: (ii) IGT adequately performed the contract; (iii) H5G breached the express provisions in the Settlement Agreement by using IGT's intellectual property without authorization; and (iv) IGT suffered damages due to H5G's breach.

Furthermore, as explained above, nothing in the Settlement Agreement releases H5G from liability on this count. Therefore, H5G's Motion to Dismiss IGT's breach of contract claim is **DENIED**.

## V. Deceptive Acts and practices, False Advertising, Injury to Business Reputation and Dilution – General Business Law Sections 349, 350, and 360-l

### A. General Business Law Sections 349 and 350

IGT further alleges that H5G's conduct violated New York General Business Law sections 349 and 350, which respectively prohibit deceptive acts and practices and false advertising. These claims have the same elements. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015); *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 967 N.E.2d 675, 675-76, 944 N.Y.S.2d 452 (2012). To state a claim, a plaintiff must allege that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." See *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d

Cir.2000). However, GBL § 349 and § 350 are primarily consumer protection devices as opposed to tools to resolve competitor disputes. *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995). *See also Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 300 A.D.2d 608, 609 (App.Div. 2d Dep't 2002) (plaintiff must allege "an impact on consumers at large" to state a false advertising claim under § 350).

Although these sections are consumer protection statutes, courts have found that industry competitors may enforce them under limited circumstances. *See Gucci Am., Inc. v. Duty Free Apparel Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) ("'[C]orporate competitors now have standing to bring a claim under this [statute] ... so long as some harm to the public at large is at issue....'") (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)).

Therefore, a non-consumer plaintiff has standing when the "gravamen of the complaint [is] consumer injury or harm to the public interest" and "allege[s] conduct that has significant ramifications for the public at large." *Gucci Am., Inc.*, 277 F. Supp. 2d at 273; *see also Feel Better Kids, Inc. v. Kids in Need, Inc.*, No. CV-06-0023 DRH AKT, 2012 WL 4483000, at *8 (E.D.N.Y. Aug. 28, 2012), report and recommendation adopted, No. 06 CV 23 DRH AKT, 2012 WL 4483874 (E.D.N.Y. Sept. 27, 2012); *Greenlight Capital, Inc. v. Greenlight (Switzerland) S.A.*, No. 04–CV–3136, 2005 WL 13682, at *6 (S.D.N.Y. Jan. 3, 2005); *Bologna v. Allsate Ins. Co.*, 138 F. Supp. 2d 310, 324 (E.D.N.Y. 2001). Public harms that may reach the required threshold include "potential danger[s] to the public health or safety." *Gucci Am., Inc.*, 277 F. Supp. 2d at 273; *see also La Cibeles, Inc. v. Adipar, Ltd.*, No. 99 Civ. 4129, 2000 WL 1253240, at *15 (S.D.N.Y. Sept. 1, 2000); *Shred–It USA, Inc. v. Mobile Data Shred, Inc.*, 228 F. Supp. 2d 455, 465 (S.D.N.Y. 2002) (conduct must consist of "significant ramifications for the public at large" in order to properly state a claim for relief) (internal quotations and citation omitted);

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, No. 91 Civ. 4544, 1992 WL 170559, at *4 (S.D.N.Y. July 2, 1992). Accordingly, courts in this circuit agree that GBL Section 349 claims that stem from alleged trademark infringement involve public harm that is too attenuated and insubstantial to satisfy the statutes' consumer protection purposes. *See Zip Int'l Grp., LLC v. Trilini Imports, Inc.*, No. 09–CV–2437, 2011 WL 2132980, at *9 n. 10 (E.D.N.Y. May 24, 2011); *Gucci Am., Inc.*, 277 F. Supp. 2d at 273 (collecting cases).

Here, IGT fails to state a viable cause of action under GBL Sections 349-350. Though IGT alleges H5G's deceptive actions harmed their business, the FAC failed to adequately allege harm to the public-at-large other than potential consumer confusion. FAC at ¶ 55. Since "the gravamen of [Plaintiffs'] complaint is harm to a business as opposed to the public at large, [IGT] does not have a cognizable cause of action under § 349." *Gucci Am., Inc.*, 277 F. Supp. 2d at 274; *see also Fashion Boutique of Short Hills*, 1992 WL 170559, at *3–4; *Shred–It*, 228 F. Supp. 2d at 465; *Perkins School for the Blind, v. Maxi-Aids Inc.*, 274 F. Supp. 2d 319, 327 (E.D.N.Y. 2003) ("It is well-established that trademark infringement actions alleging only general consumer confusion do not threaten the direct harm to consumers for purposes of stating a claim under [NYGBL § 349.]") (internal quotations and citations omitted); *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 543 (S.D.N.Y. 2012) ("the prevailing view in the Second Circuit is that 'trademark infringement claims are not cognizable under [NYGBL] § 349 unless there is specific and substantial injury to the public interest over and above the ordinary trademark infringement.'") (quoting *MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615(CM), 2012 U.S. Dist. LEXIS 47313, 2012 WL 1107648, at *15 (S.D.N.Y. Mar. 30, 2012); *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 306 (E.D.N.Y. 2014).

Therefore, because the FAC fails to allege facts addressing harm to the public beyond the

general consumer confusion associated with trademark infringement claims, H5G's motion to dismiss IGT's deceptive acts and false advertising claims pursuant to GBL § 349 and §350 in Count IV is **GRANTED**.

**B. General Business Law Section 360-l[11]**

To establish a claim for trademark dilution under GBL Section 360-l, a plaintiff must show "(1) that the trademark is truly distinctive or has acquired secondary meaning, and (2) a likelihood of dilution either as a result of blurring' or tarnishment." *Knowles-Carter v. Feyonce, Inc.*, 347 F. Supp. 3d 217, 229 (S.D.N.Y. 2018) (citation and quotations omitted).

IGT has alleged facts sufficient to state a claim under § 360-l. As discussed above, IGT alleges that they are "one of the world's largest developers and distributors of computerized gaming equipment and software, especially in the field of casino-style slot games," and that it "makes substantial investment in innovation and provides a portfolio of leading technology products and services across all gaming markets" FAC at ¶¶ 6-7. These assertions are sufficient to allege the trademarks are distinctive nationwide as required under GBL Section 360-l. *Cf. SMJ Group, Inc. v. 417 Lafayette Rest. LLC*, No. 06 Civ. 1774, 2006 WL 2516519, at *4 (S.D.N.Y. Aug. 30, 2006) (dismissing plaintiff's claim under § 360-l because the asserted trademark's distinctiveness did not reach plaintiff's customers outside of the New York metro area). Additionally, IGT alleged that H5G's use of its trademarks is likely to cause "dilution of the distinctive quality of IGT's GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS trademarks and artwork". FAC at ¶ 55. IGT also provided side by side comparisons of the parties' artwork to support their claim of dilution. *See e.g.*, ECF No. 56 at ¶¶ 19-24, 28-31, 36-

---

[11] N.Y. Gen. Bus. Law § 360-l reads, "Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

41, et seq. Accordingly, IGT has stated a claim under GBL Section 360-1.

**VI. Federal Copyright Infringement**

To state a claim for copyright infringement, a plaintiff must allege "(1) which specific original works are the subject of the claim; (2) plaintiff's ownership of the copyrights in those works; (3) proper registration of the copyrights; and (4) by what acts during what time the defendant infringed the copyright." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 507-08 (S.D.N.Y. 2015) (quoting *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992)) (internal quotation marks omitted).

Here, IGT states a plausible copyright infringement claim. IGT provided over thirty examples of how and when H5G allegedly infringed IGT's validly owned, registered copyrights. *See* FAC ¶¶ 24, 31, and 40. The FAC provides "side-by-side comparison[s] of images" including IGTs' "copyrighted artwork" and H5G's infringing uses of the asserted copyrights and artwork. *Id* at ¶ 28. Defendants argue that a copyright registration is limited to a "single 2-D image." ECF No. 86 at p. 25. However, each of IGT's copyright registrations provide protection for numerous works associated with the respective game, including the over thirty instances of infringement detailed in FAC ¶¶ 24, 31, and 40.

Furthermore, the Settlement Agreement did not release H5G from liability on this claim. IGT received two Federal Copyright Registrations for its 2-D artwork on January 11, 2018, and another Federal Copyright Registration for additional 2-D artwork on January 22, 2018. *Id.* at ¶¶ 12-14. H5G's accused infringement of IGT's copyrighted artwork began after January 1, 2016, after H5G agreed that IGT was the sole owner of the artwork, and after H5G agreed to a license for the artwork under § 9(e) et seq. of the Settlement Agreement. *See e.g.*, FAC ¶¶ 12-14, 17-18,

16

21-28, 32-43. Therefore, H5G's Motion to Dismiss IGT's copyright infringement claim is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Counts I, II, III and V is **DENIED**. Defendant's Motion to Dismiss Count IV is **GRANTED** in part and **DENIED** in part.

SO ORDERED.

**Date: March 29, 2019**
New York, New York

　　　　　　　　　　　　　　　　　　　　**ANDREW L. CARTER, JR.**
　　　　　　　　　　　　　　　　　　　　**United States District Judge**