Lynne A. Borchers (LB-6894)
David Purks (admitted *pro hac vice*)
Peter Siddoway (admitted *pro hac vice*)
Jerome Alexander DeLuca (admitted *pro hac vice*)
Sage Patent Group, PLLC
4120 Main at North Hills Street
Suite 230
Raleigh, North Carolina 27609
Telephone: 984-219-3358
Facsimile: 984-538-0416

Attorneys for Plaintiff IGT

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IGT,<br><br>            Plaintiff,<br><br>   v.<br><br>HIGH 5 GAMES, LLC.,<br><br>            Defendant. | Civil Action No. 1:17-cv-09792-ALC<br><br>**JURY DEMAND** |

## SECOND AMENDED COMPLAINT

## PARTIES

1.      At all times relevant to this complaint, plaintiff IGT ("IGT") is, and has

been, a corporation organized and authorized to do business under the laws of the state of

Nevada, and having a principal place of business at 6355 South Buffalo Drive,

Las Vegas, Nevada 89113.

2.     Upon information and belief, at all times relevant to this complaint, defendant High 5 Games, LLC ("High 5 Games") is, and has been, a corporation organized and authorized to do business under the laws of the state of Delaware, and presently having its principal place of business at One World Trade Center, Floor 58, New York, New York, 10007.

## JURISDICTION AND VENUE

3.     This is a multiple-count action for infringement of a federally registered trademark under the federal trademark laws, or Lanham Act of 1946, 15 U.S.C. § 1114(1)(a); for unauthorized use of a term, for false descriptions of origin and for false or misleading descriptions or representations of fact ("unfair competition") under the Lanham Act, 15 U.S.C. § 1125(a)(l)(A); for breach of contract under common law; for infringement of federally registered copyrights under the federal copyright laws, 17 U.S.C. § 501, *et al.*, and for dilution under New York General Business Law § 360-l. Jurisdiction is conferred on this court under 15 U.S.C. § 1125(a) (1) (false advertising) and 28 U.S.C. §§ 1331 (federal question), 1338(a) (trademark infringement and copyright infringement), and 1338(b) (unfair competition).

4.     With respect to the non-federal claims, this court has original and ancillary jurisdiction under 28 U.S.C. §§ 1338(b) and 1332(a).

5.     Venue in this district is proper under 28 U.S.C. § 1391(b) as substantial parts of the events giving rise to the claims in this action occurred within this district.

## FACTS COMMON TO ALL COUNTS

6.     IGT has been and is currently one of the world's largest developers and distributors of computerized gaming equipment and software, especially in the field of casino-style slot games.

7.     IGT makes substantial investment in innovation and provides a portfolio of leading technology products and services across all gaming markets, including land-based casinos, online for-wager gaming, and online non-wager social gaming.

8.     IGT's portfolio of products and services enables players to experience their favorite games across all channels.

9.     On June 7, 2011, IGT received a United States trademark registration (Registration No. 3976064), for the use of the trademark "GOLDEN GODDESS" for gaming machines, namely, devices which accept a wager.

10.    IGT is the owner of the trademark "CATS" used for, among other purposes, casino-style slot games.

11.    On November 6, 2007, IGT received a United States trademark registration (Registration No. 3330664) for the use of the trademark "DA VINCI DIAMONDS" for gaming machines, namely, devices on which a wager is placed [and components therefor].

12.    IGT received U.S. Copyright Registration VA 2-082-268, titled GOLDEN GODDESS GAMING MACHINE for 2-D artwork, which has an Effective Date of Registration of January 11, 2018.

13.     IGT received U.S. Copyright Registration VA 2-082-956, titled CATS GAMING MACHINE for 2-D artwork, which has an Effective Date of Registration of January 11, 2018.

14.     IGT received U.S. Copyright Registration VA 2-084-417, titled DAVINCI DIAMONDS GAMING MACHINE for 2-D artwork, which has an Effective Date of Registration of January 22, 2018.

15.     High 5 Games provided IGT certain casino-style slot games that it had created and developed.  IGT distributed those games as slot gaming machines to casino operators, and hosted them over the Internet as online for-wager games and online non-wager social games.  Games that were created and distributed during this relationship included titles such as GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS among numerous others.

16.     A dispute arose between the parties related to a subset of the casino-style slot games that High 5 Games had created and developed ("Disputed Games"), and the parties each filed suit against the other in the United States District Court for the Northern District of Illinois.  *See IGT v. High 5 Games, LLC*, Case No. 15 cv-2163 and *High 5 Games, LLC v. IGT*, Case No. 1:15-cv-02133 ("the N.D. Illinois Actions").

17.     Effective January 1, 2016, the parties settled the N.D. Illinois Actions and executed a confidential Settlement Agreement ("Settlement Agreement"), which set forth the rights of the parties regarding certain intellectual property related to the Disputed Games, including the trademarks GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS and the artwork associated with games using those marks.

4

18.     IGT owns the GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS games.  IGT also owns all patents, trademarks, copyrights, and applications for registration or registration of any of any intellectual property, which includes the intellectual property related to GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS.  IGT granted High 5 Games a limited license to the intellectual property associated with a majority of the Disputed Games in a specific field of use.  This specific limited license excludes a number of the Disputed Games, including the GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS games.  IGT granted High 5 Games another more limited license to use the artwork and trademarks associated with all of the Disputed Games, which expressly excludes any use within a casino-style slot game.

19.     On or about November 2, 2017, and contrary to the license, IGT learned that High 5 Games was using the GOLDEN GODDESS and CATS trademarks and artwork, or derivatives thereof, within casino-style slot games on its casino apps for smartphones and other electronic devices.  These apps were being offered for distribution to the public.  Upon information and belief, these apps continue to be offered for distribution to the public.

20.     Upon information and belief, High 5 Games describes its GOLDEN GODDESS and CATS casino-style slot game apps as follows: "Debuting with the exclusive sequel to the international hit slot game Golden Goddess, the new app spotlights six slot games within the 'Golden Goddess' theme and gives players the chance to beat the app! Along with High 5 Games' other latest app, both CATS Casino

and Golden Goddess Casino offer a unique gaming experience to slot enthusiasts, where

they are able to complete the app by collecting three stars in all six themed slot games."

21.    A side-by-side comparison of IGT and High 5 Games' use of the

GOLDEN GODDESS trademark and artwork associated with that use is shown below:





22.    High 5 Games is using GOLDEN GODDESS in connection with its product "GOLDEN GODDESS Casino - Best Vegas Slot Machines," which is a casino-style slot game, as shown for example in the above screen shot.

23.    High 5 Games's GOLDEN GODDESS Casino includes a number of levels, including a level branded PLATINUM GODDESS.  Upon information and belief, High 5 Games' GOLDEN GODDESS Casino and the levels included within it, including PLATINUM GODDESS, incorporate methods, processes, practices, formulas, algorithms, math models, pay tables, configurations, functions, features, designs, drawings, symbols, graphics, artwork, pictures, images, animations, screen layouts, and software associated with IGT's GOLDEN GODDESS game.  High 5 Games's PLATINUM GODDESS is a derivative of, and substantially similar to, IGT's GOLDEN GODDESS trademark and the PLATINUM GODDESS level also includes IGT's

copyrighted artwork, or artwork that is substantially similar, within a casino-style slot game.

24.     A side-by-side comparison of IGT's copyrighted artwork associated with its GOLDEN GODDESS game and High 5 Games' use of the GOLDEN GODDESS trademark and artwork within High 5 Games' GOLDEN GODDESS Casino and within High 5 Games' PLATINUM GODDESS casino-style slot game is shown below:

| IGT's Copyrighted Artwork | High 5 Games GOLDEN GODDESS Casino Artwork |
|---|---|
|  | |



| IGT's Copyrighted Artwork | High 5 Games PLATINUM GODDESS Artwork |
|---|---|
|  |  |
|  |  |
|  | |









25.     Prior to such use of the trademark GOLDEN GODDESS and the copyrighted  artwork, High 5 Games did not obtain approval from IGT to use the GOLDEN GODDESS trademark, any derivative thereof, or the copyrighted artwork.

26.     High 5 Games is not licensed to use the GOLDEN GODDESS trademark, any derivative thereof, or the GOLDEN GODDESS artwork for use within High 5 Games' GOLDEN GODDESS Casino or within High 5 Games' PLATINUM GODDESS casino-style slot game.

27.     On November 16, 2017, IGT objected to High 5 Games' use of the GOLDEN GODDESS trademark and associated artwork.

28.     A side by side comparison of IGT and High 5 Games' use of the CATS trademark and artwork associated with that use is shown below:

| IGT | High 5 Games |
|---|---|



29.    High 5 Games is using CATS in connection with its product

"CATS Casino – Real Hit Slots!," which is a casino-style slot game, as shown for

example in the above screen shot.

16

30.     High 5 Games's CATS Casino includes a number of levels, including a level branded MAJESTIC CATS.  Upon information and belief, High 5 Games' CATS Casino and the levels included within it incorporate methods, processes, practices, formulas, algorithms, math models, pay tables, configurations, functions, features, designs, drawings, symbols, graphics, artwork, pictures, images, animations, screen layouts, and software associated with IGT's CATS game.  High 5 Games' MAJESTIC CATS is a derivative of, and substantially similar to, IGT's CATS trademark and includes IGT's copyrighted artwork, or artwork that is substantially similar, within a casino-style slot game.

31.     A side-by-side comparison of IGT's copyrighted artwork associated with its CATS game and High 5 Games' use of the CATS trademark and artwork within High 5 Games' CATS Casino and High 5 Games' MAJESTIC CATS casino-style slot game is shown below:

| IGT's Copyrighted Artwork | High 5 Games CATS Casino Artwork |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

| IGT's Copyrighted Artwork | High 5 Games MAGESTIC CATS Artwork |
|---|---|
| <br><br> |  |

























32.     Prior to such use of the CATS trademark, any derivative thereof, and the copyrighted artwork, High 5 Games did not obtain approval from IGT to use the CATS trademark or the copyrighted artwork.

33.     High 5 Games is not licensed to use the CATS trademark, any derivative thereof, or the CATS artwork for use within High 5 Games' CATS Casino or within High 5 Games' MAJESTIC CATS casino-style slot game.

34.     On November 16, 2017, IGT objected to High 5 Game's use of the CATS trademark and associated artwork.

35.     Between November 16 and December 11, 2017, IGT attempted to address High 5 Games' unauthorized use of the GOLDEN GODDESS and CATS trademarks and artwork.  High 5 Games has taken the position that it is free to use these marks and artwork.

36.     IGT has not, and does not, approve of High 5 Games' use of IGT's GOLDEN GODDESS and CATS trademarks or associated artwork.

37.     As a result of High 5 Games' actions in offering casino-style slot games using IGT's trademarks and artwork, High 5 Games has infringed IGT's trademarks, breached the Settlement Agreement and caused confusion in the minds of IGT's and High 5 Games' consumers and the public as to the source, origin and quality of the GOLDEN GODDESS and CATS casino-style slot games now marketed and distributed by High 5 Games.

38.     On or about January 19, 2018, and contrary to the license, IGT learned that High 5 Games was using the DA VINCI DIAMONDS trademark and copyrighted

artwork, or derivatives thereof, within a casino-style slot game on its casino app for smartphones and other electronic devices.  This app was being offered for distribution to the public.  Upon information and belief, these apps continue to be offered for distribution to the public.

39.    High 5 Games's DA VINCI DIAMONDS Casino includes a number of levels, including a level branded DOUBLE DA VINCI DIAMONDS.  Upon information and belief, High 5 Games' DA VINCI DIAMONDS Casino incorporates at least pay tables, configurations, functions, features, designs, drawings, graphics, artwork, pictures, images, animations, and software associated with IGT's DA VINCI DIAMONDS game.

40.    A side-by-side comparison of images including  IGT's DA VINCI DIAMONDS trademark and copyrighted artwork and High 5 Games' use of the DA VINCI DIAMONDS trademark and artwork within High 5 Games' DA VINCI DIAMONDS Casino is shown below:

| IGT | High 5 Games |
|---|---|















41.     High 5 Games is using DA VINCI DIAMONDS in connection with its product "DA VINCI DIAMONDS Casino - Best Free Slot Machines," which is a casino-style slot game, as shown for example in the above screen shot.

42.     Prior to such use of the trademark DA VINCI DIAMONDS and the copyrighted artwork, High 5 Games did not obtain approval from IGT to use the DA VINCI DIAMONDS trademark or the copyrighted artwork.

43.     High 5 Games is not licensed to use the DA VINCI DIAMONDS trademark or the DA VINCI DIAMONDS artwork for use within High 5 Games' DA VINCI DIAMONDS Casino casino-style slot game.

44.     IGT continues to investigate whether High 5 Games has used or is using additional IGT trademarks or artwork contrary to the license.

45.     Based on IGT's continued investigation to date, IGT has discovered that High 5 Games is using over one hundred (100) of IGT's trademarks contrary to the terms of the Settlement Agreement.

46.      The Settlement Agreement includes five license grants to High 5 Games in Sections 9(a)-9(e).

47.     Section 9(f) sets forth conditions on all of the licenses granted to High 5 Games under any trademarks.

48.     Section 9(a) of the Settlement Agreement grants High 5 Games a license under all rights in the Game IP embodied by any of one hundred and twenty-nine (129) Previously Accepted Games listed on Exhibit B to the Settlement Agreement and the five

(5) games listed in Category 1 of Exhibit D to the Settlement Agreement solely for any "Wager Use" of a game within an open, widespread computer-based network environment (*e.g.*, the Internet), excluding (a) "Server Based Use" (*i.e.*, Land Based Use of a game within a local or wide area private computer-based network, in which the game is stored on one or more private servers and may be distributed among a plurality of gaming machines in communication with the server via the local or wide area network) ("Online Wager Use"); (b) use within an open, widespread computer-based network environment (*e.g.*, the Internet) wherein such use is not a Wager Use ("Online Social Use"; and (c) use, whether as a Wager Use or not, provided in a down-loaded or streaming format compatible with personal mobile devices, including mobile phones and tablet devices ("Mobile Use"); and sublicense other to do the same.

49.    "Game IP" is defined in the Settlement Agreement to mean that IGT does and will continue to solely own all H5G-IGT Games and (a) all Technology embodied in the Disputed Games, Previously Accepted Games, Exclusive IGT Games, Existing Co-Developed Games or other H5G-IGT Games or that was otherwise conceived, reduced to practice, created or made before the Effective Date of the Settlement Agreement by High 5 Games or any of its representatives, in whole or in part, solely or jointly, as a result of activities performed pursuant to the 2012 Agreement or any other agreement between the parties in effect before the Effective Date, and (b) all intellectual property rights for registration or registration of any of the foregoing, except for H5G Intellectual Property.

50.    "Wager Use" is defined in the Settlement Agreement to mean uses that include "gaming" or "gambling," or to deal, operate, carry on, conduct, maintain, or

expose for play any game on any mechanical, electromechanical, or electronic device or machine for money, property, checks, credit, or any representative of value independent of the act of playing the game.  Wager Use does not include games played using credits having no cash value, whether or not such credits could be used for additional playing time by the user.  For purposes of clarity, a game using virtual coins or credits redeemable for virtual goods or services, and/or including a randomly distributed prize or award having actual value, where such distribution is based solely on a user participating in the game and independent of any credits won or risked, is not Wager Use.

51.     Section 9(b) of the Settlement Agreement grants High 5 Games a license under all rights in the Game IP embodied by any of one hundred and twenty-nine (129) Previously Accepted Games and the five (5) games listed in Category 1 of Exhibit D to the Settlement Agreement for the purpose of exploiting such game features or game functionality for all uses, and High 5 Games may sublicense others to do the same.

52.     Section 9(c) of the Settlement Agreement grants High 5 Games a license to use the thirty-one (31) trademarks listed in Exhibit F to the Settlement Agreement ("Game Features Trademarks") to identify the relevant game features and game functionality in games it develops for Online Wager use, Mobile Use, and Online Social use.

53.     Section 9(d) of the Settlement Agreement grants High 5 Games a license to use the thirty-one (31) Game Features Trademarks to identify relevant game features and game functionality in games it develops for Land Based Use, subject to certain additional restrictions.

54.     Section 9(e) of the Settlement Agreement grants High 5 Games a license to the artwork and trademarks created by High 5 Games as part of the H5G-IGT Games for any purpose other than use within a casino-style slot game.  For example, this license permits High 5 Games to use these assets for apparel or first-person action games.

55.     Section 9(f) of the Settlement Agreement requires that all uses of IGT's marks licensed to High 5 Games must identify the trademarks as being owned by IGT and used under license using specific language;

56.     Section 9(f) of the Settlement Agreement also requires that, for all licenses granted to High 5 Games under any trademarks, and before using any of the trademarks in commerce or otherwise publicly displaying their intended use, High 5 Games must submit a representative sample or mock up of the expected usage to IGT for approval, such approval not to be unreasonably withheld.  IGT may refuse or revoke its approval or deemed approval if at any time it reasonably believes that the usage is or will be impairing, prejudicing, or diluting IGT's rights in the trademarks or the reputation of IGT or any of its Affiliates.  If IGT refuses approval of any such use, then such use is not licensed and High 5 Games will modify the intended use until it obtains approval or not use the trademark in such manner.  If IGT revokes an approval or deemed approval, then High 5 Games will cease using the trademark in the manner formerly approved as soon as reasonably possible.  High 5 Games will submit samples of approved trademark uses as reasonably requested by IGT from time to time for purposes of determining conformance with the terms of this trademark license for purposes of quality control.  High 5 Games

shall use the trademarks only in connection with reputable goods and services of reasonably high quality.

57.     On March 16, 2018, the Court enjoined High 5 Games "from infringing on Section 9(f)" of the Settlement Agreement.  ECF No. 69 at 1.

58.     On March 20, 2018, in this case, IGT requested an order to show cause prior to an order of contempt against High 5 Games for failing to comply with the Court's injunction.  ECF. No. 70 at 1-2.  The Court granted IGT's request on March 27, 2018, and ordered High 5 Games to show cause why an Order of Contempt should not be entered.  ECF No. 72 at 1.

59.     In a subsequent clarifying Order, on April 17, 2018, the Court stated that "[c]ompliance with Section 9(f) includes, but is not limited to . . . before using the [relevant trademarks] in commerce or otherwise publicly displaying their intended use, High 5 Games must submit to IGT for approval a representative sample or mock up of the expected usage."  ECF No. 83 at 5.

60.     The  Court expressly stated that "the aforementioned requirement applies equally to past, present, and future uses of the relevant trademarks, including to uses of the relevant trademarks prior to the 2016 Settlement Agreement"; and "If IGT refuses or revokes its approval of any use of the relevant trademarks in accordance with Section 9(f), High 5 Games must modify the intended use or cease using the trademark as soon as reasonably possible."  ECF No. 83 at 5, 6.

61.     The Court's April 17 clarifying Order denied IGT's request for an Order of Contempt.

62.     IGT has received requests from High 5 Games under Section 9(f) for certain proposed uses of four (4) trademarks that are covered by the Settlement Agreement:  GOLDEN GODDESS, CATS, DA VINCI DIAMONDS, and GOLDEN KNIGHT.

63.     Pursuant to Section 9(f), IGT has not approved these requests for various reasons provided to High 5 Games, including that IGT reasonably believes that the usages of the four (4) trademarks is or will be impairing, prejudicing, or diluting IGT's rights in the trademarks or the reputation of IGT or its Affiliates.

64.     The first request from High 5 Games under Section 9(f) was received by IGT on March 22, 2018, two days after IGT served its request for order to show cause. The most recent request from High 5 Games under Section 9(f) was received by IGT on April 18, 2018, one day after the Court April 17 clarifying Order denying IGT's request for an Order of Contempt.  On information and belief, IGT has not received any request from High 5 Games for approval under Section 9(f) for any use of any trademark before March 22, 2018, or since April 18, 2018.

65.     Attached as Exhibits A and B to this Second Amended Complaint are lists comprising over one hundred (100) IGT trademarks covered by the Settlement Agreement that High 5 Games is using.  High 5 Games' use of the marks in Exhibits A and B is without IGT's approval and contrary to Section 9(f) and the Court's April 17, 2018 Order ("IGT Marks").

66.     The list in Exhibit A includes one hundred and forty (140) IGT trademarks covered by the Settlement Agreement that, upon information and belief, High 5 Games

has used and is continuing to use at least as the titles of games without approval from IGT.  The list in Exhibit B includes sixteen (16) IGT trademarks covered by the Settlement Agreement that, upon information and belief, High 5 Games has used and is continuing to use to identify game features included in High 5 Games' games.  For completeness, the marks previously at issue in this case, as well as the related Case No. 19-cv-05752, have also been included in Exhibit A.

67.    The majority of IGT's Marks included in Exhibits A and B were each issued a United States trademark registration.  The Registration Numbers and description of goods and services for each of these registered marks is shown in Exhibits A and B.

68.    IGT is the owner of the remainder of the unregistered trademarks shown in Exhibits A and B for, among other purposes, gaming machines, namely, devices which accept a wager.

69.    IGT reviewed High 5 Games' website, www.high5games.com.  Printouts of portions of that website, accessed on July 22, 2019, are attached hereto as Exhibits C-E. Exhibit C is a copy of High 5 Games' "Games" webpage ("https://www.high5games.com/games/").  Exhibit D is a copy of High 5 Games' "Official Game Library" webpage ("https://www.high5games.com/games/game-library/").  Exhibit E is a screenshot of the "Features" selection tool from High 5 Games' "Official Game Library" page.

70.    Upon information and belief, and as shown on High 5 Games' website, High 5 Games is using each of IGT's Marks listed in Exhibit A in connection with High 5 Games' sale or distribution of games, as summarized in Exhibits A and B.

71.     Upon information and belief, and as shown on High 5 Games' website, High 5 Games is offering these games using IGT's Marks for distribution to the public. Upon information and belief, these games using IGT's Marks continue to be offered for distribution to the public.

72.     The majority of High 5 Games' uses of IGT's Marks listed in Exhibits A and B, in connection with the sale or distribution of games, are identical to IGT's Marks.

73.     All of High 5 Games' uses of IGT's Marks listed in Exhibits A and B, in connection with the sale or distribution of games, are confusingly similar to IGT's Marks.

74.     Pursuant to Section 9(f) of the Settlement Agreement, High 5 Games is not licensed, or otherwise authorized, to use any of the IGT Marks listed in Exhibits A and B.

75.     On December 11, 2018, IGT notified High 5 Games of its unauthorized use of certain IGT's Marks listed in Exhibit A.

76.     To date, High 5 Games has not provided a substantive response to IGT's December 11, 2018 letter.

77.     Upon information and belief, High 5 Games has not ceased its use of the IGT Marks.

78.     Upon information and belief, High 4 Games' infringement of the IGT Marks is intentional and willful.

### COUNT I - FEDERAL TRADEMARK INFRINGEMENT

79.     Plaintiff hereby re-alleges, as if fully set forth, the allegations of paragraphs 1-44.

80.     Defendant's unauthorized use of plaintiff's registered trademarks, either exactly or in the form of colorable imitations, is likely to cause confusion, to cause mistake, or to deceive.

81.     Upon information and belief, defendant's unauthorized use of plaintiff's registered trademarks is willful and has caused confusion, mistake or deception.

82.     Defendant's actions constitute unauthorized use in commerce of plaintiff's registered trademarks, which is likely to cause confusion, mistake or deception, in violation of 15 U.S.C. § 1114(a), and is causing plaintiff damages and irreparable harm.

## COUNT II - FEDERAL UNFAIR COMPETITION

83.     Plaintiff hereby re-alleges, as if fully set forth, the allegations of paragraphs 1-44.

84.     The foregoing acts of defendant, in identifying its goods and services with plaintiff's trademarks, damage the goodwill established by plaintiffs in its trademarks and artwork.  Defendant's acts constitute false designations of origin and false or misleading descriptions or representations of fact, which tend to cause confusion, mistake, or deception, as to the affiliation, connection, or association of defendant with plaintiff, or as to the origin, sponsorship, or approval of plaintiff's products (and related products of defendant) in violation of 15 U.S.C. § 1125(1)(A).

85.     The foregoing acts of defendant are willful and are causing plaintiff damages and irreparable harm.

## COUNT III - BREACH OF CONTRACT

86.    Plaintiff hereby re-alleges, as if fully set forth, the allegations of paragraphs 1-44.

87.    The foregoing acts of defendant are contrary to the parties' Settlement Agreement and constitute a willful breach of the Settlement Agreement, which breach has caused damage and irreparable harm to plaintiffs.

## COUNT IV - DILUTION - GENERAL BUSINESS LAW 360-l

88.    Plaintiff hereby re-alleges, as if fully set forth, the allegations of paragraphs 1-44.

89.    The foregoing acts of defendant, including the dilution of the distinctive quality of IGT's GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS trademarks and artwork and the IGT Marks listed in Exhibits A and B, the representations or suggestions that defendant is associated with plaintiffs, and authorized to distribute what is held out as being GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS casino-style slot games and the IGT Marks listed in Exhibits A and B, constitute deceptive or misleading acts and practices, false advertising, injury to business reputation and dilution which were intended to confuse, and did confuse, consumers as to the relationship between plaintiff and defendant, all causing damage and irreparable harm to plaintiff.

## COUNT V - FEDERAL COPYRIGHT INFRINGEMENT

90.    Plaintiff hereby re-alleges, as if fully set forth, the allegations of paragraphs 1-44.

91.     IGT is the owner of, and sole proprietor of all right, title and interest in and to the Federal copyrights related to IGT's GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS games.  Under 17 U.S.C. § 106, IGT has the exclusive right to reproduce, import, distribute, publicly display and prepare derivative works based on IGT's GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS games.

92.     As alleged above, the Defendant has infringed the copyrights related to IGT's GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS games by unlawfully publicly displaying, promoting, selling, and distributing products bearing designs that are copied from, and substantially similar to protected expression in, IGT's copyrights.

93.     The Defendant's infringements were willful in that they were committed with knowledge or in reckless disregard of IGT's exclusive rights in IGT's GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS games.

94.     IGT is entitled to recover from the Defendant its actual damages as well as the profits attributable to each of the infringements and not taken into account in computing actual damages, pursuant to 17 U.S.C. § 504(b); or, at IGT's election, an award of statutory damages pursuant to 17 U.S.C. § 504(c) with respect to each of IGTs copyrights infringed by the Defendant that meet the requirements of 17 U.S.C. § 412.

95.     Pursuant to 17 U.S.C. § 505, IGT is also entitled to recover its costs and attorneys' fees from the Defendant with respect to each of the IGT copyrights infringed by the Defendant that meet the requirements of 17 U.S.C. § 412.

96.     As a result of the Defendant's copyright infringements, IGT has suffered, and will continue to suffer, irreparable injury not fully compensable in monetary

damages, and is therefore entitled to an injunction enjoining the Defendant from engaging in its infringing activities.

## PRAYER FOR RELIEF

WHEREAS, plaintiff asks:

a.   That defendant, and any other persons acting in concert with defendant, be preliminarily and permanently enjoined and restrained:

      i.   from using plaintiff's trademarks GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS on casino-style slot games or the IGT Marks listed in Exhibits A and B on games (or any confusingly similar designation, alone or in combination with any other term or as part of a logo, in connection with defendant's goods or services) in accordance with the Settlement Agreement;

      ii.   from selling or marketing any app using the GOLDEN GODDESS, CATS, or DA VINCI DIAMONDS trademarks and artwork or IGT Marks listed in Exhibits A and B;

      iii.   from performing any actions or using the GOLDEN GODDESS, CATS, or DA VINCI DIAMONDS trademark, the IGT Marks listed in Exhibits A and B, or any words, names, styles, titles or marks which are likely to cause

confusion, to cause mistake or to deceive, or to otherwise mislead the trade or public into believing that plaintiff and defendant are one and the same or are in some way connected, or that plaintiff is a sponsor of defendant, or that defendant is in some manner affiliated or associated with or under the supervision or control of plaintiff, or that defendant's goods or services originate with plaintiff or are conducted or offered with the approval, consent or authorization of plaintiff, or under the supervision of plaintiff, or are likely in any way to lead the trade or the public to associate defendant's products with plaintiff's products.

iv.   from using plaintiff's GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS artwork or any derivative thereof (or any confusingly similar artwork in connection with defendant's goods or services) on casino-style slot games in accordance with the Settlement Agreement;

v.   from using any trade practices whatsoever, including those complained of herein, which tend to unfairly compete with or injure plaintiff's business and the goodwill appertaining thereto;

b.   That the defendant be ordered to immediately remove from any online marketplace all apps or other digital content using the GOLDEN

GODDESS, CATS, or DA VINCI DIAMONDS trademarks and artwork, or any colorable imitations thereof, or any other name, term and/or logo or design confusingly similar to these trademarks and artwork;

c.    That the defendant be ordered to immediately remove from any location all apparatus and digital content using the IGT Marks listed in Exhibits A and B, or any colorable imitations thereof, or any other name, term and/or logo or design confusingly similar to these trademarks and artwork;

d.    That the defendant be ordered to immediately forward to IGT all GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS artwork, or any colorable imitations thereof, or any other logo or design confusingly similar to this artwork, along with a certification that all copies of such artwork have been destroyed;

e.    That defendant be held to specific performance of the entire Settlement Agreement;

f.    That judgment be rendered against defendant:

      i.    for all profits received by defendant and all damages sustained by plaintiff on account of defendant's actions; and, furthermore, that such profits and damages be trebled;

      ii.    for punitive damages by reason of defendant's willful and tortious acts complained of herein;

g.    That plaintiff receive its costs in this action, including an award of its reasonable attorneys' fees; and

h.      That the court grant such other and further relief as it shall deem just.


This the 23rd day of July, 2019.

By: */s/ Lynne A. Borchers*
Lynne A. Borchers
David Purks
Peter Siddoway
Jerome Alexander DeLuca
SAGE PATENT GROUP, PLLC
4120 Main at North Hills Street, Suite 230
Raleigh, North Carolina 27609
(984) 219-3358 (telephone)
(984) 538-0416 (facsimile)
lborchers@sagepat.com
dpurks@sagepat.com
psiddoway@sagepat.com
jdeluca@sagepat.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Lynne A. Borchers, hereby certify and affirm that a true and correct copy of the

foregoing **Second Amended Complaint** was served via ECF on this 23rd day of July 2019 upon

all counsel of record.


By: */s/ Lynne A. Borchers*
Lynne A. Borchers (LB-6894)