UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IGT,

    Plaintiff,

-against-

HIGH 5 GAMES, LLC,

    Defendant.

17-CV-9792 (ALC) (BCM)

IGT,

    Plaintiff,

-against-

HIGH 5 GAMES, LLC,

    Defendant.

19-CV-5752 (ALC) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Now before the Court in these consolidated actions are the dueling discovery letter-motions filed on December 28, 2020 by plaintiff IGT (Pl. Dec. 28 Ltr.) (Dkt. No. 217 in Case No. 17-CV-9792; Dkt. No. 75 in Case No. 19-CV-5752) and by defendant High 5 Games, LLC (High 5) (Def. Dec. 28 Ltr.) (Dkt. No. 218 in Case No. 17-CV-9792; Dkt. No. 76 in Case No. 19-CV-5752).[1] The Court has carefully reviewed the parties' arguments, including those presented in the responding letter-briefs filed on January 11, 2021 by IGT (Pl. Jan. 11 Ltr.) (Dkt. No. 219) and by High 5 (Def. Jan. 11 Ltr.) (Dkt. No. 220), in their "clarifying" joint letter dated January 25, 2021 (Joint Ltr.) (Dkt. No. 225), and during two extended telephonic conferences on January 21 and 26, 2021. This Order memorializes certain rulings made orally during the conferences, and resolves the parties' remaining disputes, as follows:

    1.    **Scope of Intellectual Property Subject to Discovery**

        High 5 seeks, in various ways, to compel IGT to detail each "**specific** allegedly infringing use[] in commerce" of each trademark at issue in this action, and to

---

[1] All remaining record citations in this Order are to the docket in the lead case, No. 17-CV-9792.

limit its discovery obligations to uses so identified, arguing that it "cannot produce discovery," or defend against IGT's claims, without detailed information concerning each specific infringing use in commerce of each of "the 159 trademarks." Def. Dec. 28 Ltr. at 1-2 (emphasis in the original).[2] IGT states that it has adequately identified numerous infringing uses in the SAC; that it is still conducting discovery to learn the full extent of the infringement; and that in any event, defendant "knows all of its uses of IGT's trademarks" that are subject to the parties' underlying Settlement Agreement, "and should be ordered to provide such information." Pl. Jan. 11 Ltr. at 1. Indeed, IGT takes the position that it is entitled to discovery concerning all "209 IGT trademarks identified in the Settlement Agreement," whether or not listed in the SAC (as well as the three IGT copyrights identified in the SAC). Pl. Dec. 28 Ltr. at 2; *see also* Pl. Jan. 11 Ltr. at 2. Indeed, many of IGT's Requests for Production of Documents (RFPs) seek discovery concerning all "IGT Intellectual Property Subject to the Settlement Agreement," a term which it defines to include "all trademarks and artwork described in or covered by the Settlement Agreement." Pl. Dec. 28 Ltr. Ex. A, Definition No. 3.

In the Court's view, High 5 takes too narrow a view of the appropriate scope of discovery in a trademark infringement case, while IGT proposes to expand discovery too broadly. The appropriate balance is as follows: IGT may conduct discovery as to each of the 159 allegedly infringed marks identified as such in the SAC, as well as the three allegedly infringed copyrights identified as such in the SAC. Discovery will not be limited to each specifically identified "infringing use." *See Am. Eagle Outfitters, Inc. v. Payless Shoesource, Inc.*, 2009 WL 152712, at *2 (E.D.N.Y. Jan. 21, 2009) (noting with approval that defendant "agreed to produce all documents relating to its use of the marks at issue here"). Nor, absent further order of the Court, will discovery be expanded to marks beyond the 159 alleged in the SAC. *See id.* ("Discovery beyond that appears to be nothing less than the proverbial 'fishing expedition.'").

2. **Temporal Scope**

The parties agree that High 5 can only be liable – whether under the Lanham Act, for breach of contract, or otherwise – for unauthorized uses of IGT's intellectual property (IP) on or after January 1, 2016, the effective date of the parties' prior Settlement Agreement. In its RFPs, IGT seeks discovery concerning High 5's uses of IGT's IP "beginning on or after that date, as well as uses beginning prior to that date and continuing through or after the effective date of the Settlement Agreement." Pl. Dec. 28 Ltr. at 1; *see also id.* Ex. A, Definition No. 6. High 5 objects, complaining that by virtue of this language IGT "improperly seeks discovery on uses ***unlimited in scope or time***," Def. Jan. 11 Ltr. at 3 (emphasis in

---

[2] In their letters, the parties routinely reference "the 159 trademarks" that IGT accuses High 5 of infringing. The Court will follow suit, but notes that Exhibits A and B to IGT's Second Amended Complaint (SAC) (Dkt. No. 147) appear to list only 156 trademarks (including GOLDEN GODDESS, CATS, and DA VINCI DIAMONDS). The precise number of allegedly infringed IGT trademarks identified in the SAC is not material to any dispute discussed in this Order.

the original), including "discovery on claims that IGT cannot assert as a matter of law" because they were released in the Settlement Agreement. *Id*. According to High 5, if it is required to search for "uses beginning prior to that date and continuing through or after the effective date of the Settlement Agreement," it will have to "take a trademark [and] search it through 18 years of emails," which would "pull up millions of hits," most of them "worthless for this case." Transcript of Jan. 26, 2021 Conf. (Jan. 26 Tr.) at 38:22-39:1.

IGT, for its part, has repeatedly explained it only seeks uses "that occur on or after the effective date of the agreement in 2016 without regard to when that use began." Transcript of Jan. 21, 2021 Conf. (Jan. 21 Tr.) at 5:25-6:5. The phrase, "as well as uses beginning prior to that date and continuing through or after the effective date of the Settlement Agreement," was intended to ensure that High 5 did not withhold discovery of *post*-Settlement Agreement uses simply because it made the same or similar use of the same mark *pre*-Settlement Agreement. *Id*. at 6:5-14; *see also* Jan. 26 Tr. at 37:10-18 (confirming that "the purpose of the language in definition six is to make sure that [High 5 does not] withhold discovery with regard to uses that are continuing after the settlement date on the grounds that those uses began prior to [the] settlement date").

The Court accepts IGT's interpretation of Definition No. 6. Requests for discovery concerning uses of IGT's IP on or after the date of the Settlement Agreement (*e.g*., IGT RFPs No. 1-8) shall be construed to mean uses of IGT's IP on or after the date of the Settlement Agreement. High 5 may not refuse discovery of such uses because or by reason of the fact that it *began* to use the IP in question *prior* to the date of the Settlement Agreement. Nor, however, is it obligated, *by virtue of Definition No. 6*, to produce discovery concerning its pre-Settlement Agreement uses of the IP.[3]

### 3. High 5's Interrogatory No. 5

IGT need not supplement its response to Interrogatory No. 5.

### 4. High 5's Request for Leave to Serve Multiple Contention Interrogatories

High 5 seeks leave pursuant to Fed. R. Civ. P. 33(a)(1) and Local Civil Rule 33.3 to serve 795 contention interrogatories, without waiting for the conclusion of the fact discovery period, comprising five questions with respect to each of the 159 trademarks at issue. The interrogatories would ask IGT to identify the specific accused uses of each relevant trademark; describe the basis on which it alleges

---

[3] Nothing in this Order prevents the parties from specifically requesting documents or information pre-dating the Settlement Agreement where independently relevant to the parties' claims or defenses. For example, if High 5 contends that its use of one or more marks prior to January 1, 2016 "shows approval" of that use by IGT, *see* Jan. 21 Tr. at 16:16-24 ("Whatever they're saying shows approval is what we're seeking prior to the 2016 Settlement Agreement"), it could not refuse to produce evidence of such use because of the date on which it occurred.

each specific use to be unlawful; specify its damages on each infringed mark; state the basis for its claim as to the distinctiveness of the mark (and whether it has acquired a secondary meaning); and describe "the likelihood of dilution either as a result of blurring or tarnishment." Jan. 26 Tr. at 30:13-32:1. IGT responds that the discovery sought would be premature. *Id*. at 28:3-14. The Court largely agrees with IGT, except as to the distinctiveness of the marks, which is a matter within IGT's knowledge. As to each mark, therefore, High 5 may serve one interrogatory (without subparts) as to its distinctiveness and one interrogatory (without subparts) as to whether it has acquired a secondary meaning.

5. **High 5's RFPs**

    a. **RFP No. 11**. In response to High 5's Request for Production (RFP) No. 11, and to the extent not previously produced, IGT shall produce documents *sufficient to show* IGT's alleged ownership of each trademark at issue in this litigation, including "documents showing non-abandonment." Jan. 26 Tr. at 50:24.

    b. **RFPs No. 12, 13, 29-30**. In response to High 5's RFPs No. 12, 13, 29 and 30, IGT represents that, notwithstanding its written objections, it is not withholding any responsive documents based on those objections and is continuing to produce responsive documents. Jan. 26 Tr. at 15:14-24, 51:8-52:13. IGT shall promptly so confirm in writing by serving supplemental responses to these RFPs in accordance with Fed. R. Civ. P. 34(b)(2)(C), which requires the responding party to state "whether any responsive materials are being withheld on the basis of [an] objection."

    c. **RFP No. 18**. In response to High 5's RFP No. 18, IGT represents that it is not withholding any responsive documents except for privilege. Jan. 21 Tr. at 52:14-54:17. IGT shall promptly so confirm in writing by serving supplemental responses to these RFPs in accordance with Fed. R. Civ. P. 34(b)(2)(C). Any documents withheld or redacted on privilege grounds must be logged in accordance with Local Civil Rule 26.2.

6. **IGT's RFPs**

    a. **Definitions**. As used in IGT's RFPs, the term "document" shall have the meaning set forth in Local Civil Rule 26.3(c)(2). In accordance with ¶ 1 above, the term "IGT Intellectual Property Subject to the Settlement Agreement" shall refer only to the 159 trademarks (and three copyrights) identified in the SAC. In accordance with ¶ 2 above, the term "use by H5G of IGT Intellectual Property Subject to the Settlement Agreement on or after the effective date of the Settlement Agreement" shall refer only to uses on or after the effective date of the Settlement Agreement. In addition, that term shall refer only to uses in commerce.

b. **RFPs No. 1, 80-82**. In response to IGT's RFPs No. 1, 80, 81, and 82, High 5 need only produce responsive documents to the extent they were received, created, modified, or sent on or after the effective date of the Settlement Agreement. With respect to RFPs No. 80 and 81, High 5 need not produce documents pertaining solely to future products.

c. **RFPs No. 1, 75, 78-79**. IGT is generally entitled to discovery concerning High 5's revenues, expenses, and profits earned after the effective date of the Settlement Agreement from all "products" using the 159 allegedly infringed trademarks (and/or three allegedly infringed copyrights) identified in the SAC. *See* Jan. 21 Tr. at 30:10-15 (High 5 does not keep financial information "by trademark" but does keep it "by product").

d. **"Development" Files.** If High 5's game development files (beyond the graphics and artwork files, discussed below) are irrelevant to its post-Settlement Agreement use of the 159 trademarks and three copyrights identified in the SAC, High 5 need not produce those files.

e. **Graphics and Artwork Files**. If and to the extent the graphics and artwork files responsive to IGT's RFPs were previously produced to IGT, High 5 shall specifically identify each such previously-produced file (by bates number or other objective identifying feature). If and to the extent other graphics and artwork files (not previously produced) are responsive to IGT's RFPs, High 5 shall either produce those files to IGT in usable form, arrange for IGT to review them remotely (without physically visiting High 5's premises), or demonstrate to this Court, with particularity, why it would be unduly burdensome or oppressive for it to do so.

f. **Supplemental Responses**. High 5 shall promptly serve supplemental responses to IGT's RFPs 20-67, in accordance with Fed. R. Civ. P. 34(b)(2)(C), to specify "whether any responsive materials are being withheld on the basis of [an] objection," and if so, what documents (or categories) are being withheld. Any documents withheld or redacted on privilege grounds must be logged in accordance with Local Civil Rule 26.2.

7. **Deadline to Amend the Pleadings or Join Additional Parties (Dkt. No. 186)**

The deadline to amend the pleadings or join additional parties is EXTENDED to **March 26, 2021**.

8. **Further Status Conference**

The Court will conduct a telephonic status conference on **March 23, 2021, at 10:00 a.m.** At that time, the parties shall dial (888) 557-8511 and enter the access code 7746387. No later than March 16, 2021, the parties shall submit a joint letter (no longer than 8 pages) updating the Court on the status of discovery, and

proposing deadlines for the substantial completion of written discovery and the exchange of privilege logs.

The Clerk of Court is respectfully directed to close the letter-motions at Dkt. Nos. 217 and 218 in Case No. 17-CV-9792, and Dkt. Nos. 75 and 76 in Case No. 19-CV-5752.

Dated: New York, New York
February 16, 2021

**SO ORDERED**.

_____
**BARBARA MOSES**
**United States Magistrate Judge**